# THE SUPREME COURT

OF

# PENNSYLVANIA.

MIDDLE DISTRICT, MAY TERM, 1845.

HARRISBURG.

---

## MORRISON and STEELE, Appellants, *v.* HOFFMAN and Others, Appellees.

M. and S., judgment creditors of L., issued writs of fi. fa. against the said L. on their · respective judgments; under which levies were made by the sheriff upon the personal property of the defendant to an amount more than sufficient, had it been sold, to have satisfied their respective judgments. To sell the property so levied upon and left by the sheriff in the exclusive possession of the defendant, writs of ven. ex. were issued, which were returned by the sheriff without any attempt to sell, in the one case, "*not executed by order of plaintiff*," and in the other, (which, however, was proved to have been made by mistake,) "*stayed by order of plaintiff*."

*Held*, in the absence of any proof showing collusion between the plaintiffs and defendant, that as the property was left in the possession of the defendant and used by him as before the levy, and as the subsequent judgment creditors could in nowise be said to have been hindered, delayed, or prevented thereby, from suing out executions upon their judgments, so as to have had the same property applied by means thereof to the payment of them: that M. and S., after the personal property levied upon under their executions had either been sold under subsequent judgments and executions, or consumed and disposed of by the defendant himself, did not lose their liens on his real estate, nor their right to claim a preference to be paid, according to the seniority of their liens, out of the moneys raised and brought into court from a judicial sale of the defendant's real estate.

THIS was an appeal taken by Joseph S. Morrison and George F. Steele, from the decree of the Court of Common Pleas of Bedford county, in the matter of the appropriation of the moneys raised from a judicial sale, made by the sheriff, of the real estate of David Loy.

Joseph S. Morrison obtained a judgment against David Loy and Martin Loy, which was entered to November term, 1839, No. 26.

B                                      13

Upon this judgment a fi. fa. was issued to November term, 1839, No. 17, and a levy made on the personal property of the defendant to a large amount. To sell the property so levied upon and left by the sheriff in the possession of the defendant, a ven. ex. was issued to April term, 1840, No. 16, which was returned by the sheriff "*not exe-cuted by order of plaintiff.*" To revive this judgment, a scire facias issued to April term, 1843, No. 19, and on the 1st of February, 1843, judgment was entered for $1255 84. On the judgment so revived, a fi. fa. was issued to August term, 1842, No. 182, and returned "*tarde venit.*" Al. fi. fa. to November term, 1843, No. 1, and levy made on the personal property of Martin Loy. Martin Loy applied to the court to set aside this execution and levy under it, and to open the judgment on the ground that he was a surety in the judgment, and discharged from all responsibility to Morrison, the plaintiff, he having issued an execution on the original judgment, and levied on the personal pro-perty of the principal to an amount sufficient to pay and satisfy the said judgment. The court below set aside the execution, and opened the judgment to enable Martin Loy to make this defence.

On the 9th of April, 1841, George F. Steele, one of the appellants, entered up two judgments against David Loy and John Patterson, who were partners in the iron business for $826 each, to April term, 1841, Nos. 96 and 97. On the first of these judgments, viz., No. 96, a fi. fa. was issued to August term, 1842, No. 32, which was returned, levied on "*one hundred tons of pig metal and ten tons of stoves.*" A ven. ex. to November term, 1842, No. 92, was issued and returned, "*property advertised and sale stayed by order of plaintiff.*" It appeared, however, from the testimony of the sheriff, who was examined as a witness before the auditor appointed to make distribution, &c., that the return to the above ven. ex. was made by mistake; that George F. Steele never authorized him directly or indirectly to stay any exe-cution issued at his suit, against Loy and Patterson. An alias ven. ex. was then issued to April term, 1843, and returned, "*not sold for want of bidders.*" A plur. ven. ex. then issued to August term, 1843, No. 192, which was returned, "*property advertised, and on day of sale could not be found.*"

On the second judgment of George F. Steele, viz., No. 97, of April term, 1841, a fi. fa. was issued to November term, 1842, which was levied upon "*fifty tons of pig metal and ten tons of stoves,*" and returned, "*sale stayed by order of plaintiff.*" This return was also made by mistake, as appeared from the testimony of the sheriff, to which reference has been already made. A ven. ex. and an alias ven. ex. were also issued, and returned as in the first judgment. To

April term, 1841, No. 101, David Puderbaugh entered up a judgment against David Loy & Co., for $641 69; and to the same term, No. 102, a judgment against David Loy for $299 92.  Upon these judgments writs of fi. fa. were issued to April term, 1842, and returned, *"stayed by order of plaintiff."*  Alias writs of fi. fa. were then issued to August term, 1842, and returned *"levied on one hundred tons of pig metal and ten tons of stoves."*  To sell the property so levied upon, writs of ven. ex. were issued to November term, 1842, and returned, *"sale stayed by order of plaintiff."*

It appeared that part of the property levied upon by the sheriff under the executions of the appellants was afterwards levied upon and sold at the suit of other judgment creditors, but much the greater part of it was disposed of and used by the defendants in the executions.

It appeared from the record that the real estate of David Loy was sold by the sheriff, under judicial process issued upon the following judgments.

| | |
|---|---|
| Slingluff & Stevenson, Merchants, &c., *v.* David Loy & John Patterson, Ironmasters, &c. | Of January term, 1842, No. 80. |
| | Debt $525 54. |
| | Interest from 25th of January, 1842. |
| | Fi. fa. to April term, 1843, No. 8. |
| | Ven. ex. to January term, 1844, No. 77. |
| John Hack & ————, Merchants, &c., *v.* David Loy & John Patterson. | Of April term, 1843, No. 229. |
| | Debt $108 91. |
| | Interest from 11th April, 1843. |
| | Fi. fa. to November term, 1843, No. 40. |
| | Ven. ex. to January term, 1844, No. 16. |

March 6th, 1844.   Rule granted on the sheriff to bring the money made in the above cases into court.  Same day, sheriff paid the money into court.

June 7th, 1844.   An auditor was appointed to make distribution and report the facts to the court.  On the 22d of July, 1844, the auditor filed his report.

According to this report the money made by the sheriff out of the land, levied upon and sold under the first judgment, above stated, was  -  -  -  -  -  -  $5690 00
And under the second judgment, above stated,  -  $2290 00

$7980 00

From which was deducted the fees and costs of sale, amounting to  -  -  -  -  -  -  -  -  110 70¾

Balance for distribution,  -  -  -  -  -  $7869 29¼

In appropriating this balance, the auditor says in his report, " That the first judgment to be paid, is that of

James Agnew
v.
David & Martin Loy.

Of August term, 1843, No. 446.
Debt and interest up to sale, $1359 15.
This judgment was originally entered on the judgment docket, on the 26th of January, 1825, and regularly revived by scire facias.

" That the second judgment to be paid, is that of

David Puderbaugh
v.
David Loy & Co.

Of April term, 1841, No. 99.
The amount of this judgment did not appear upon the record.

" That the third judgment to be paid, is that of

Slingluff & Stevenson
v.
David Loy & Co.

Of January term, 1842, No. 80.
Debt $525 54.
Interest from 25th of January, 1842."

The balance of the money, after deducting the amount of the above judgments, interest and costs, was appropriated by the auditor to the payment of nine other judgments, all of which were obtained and entered subsequently to the date of the judgment last above stated, to the exclusion of the judgments of Morrison, Steele, and Puderbaugh, the appellants.

On the 7th of October, 1844, the following exceptions were filed to the report of the auditor.

In the matter of the distribution of the money arising from the sale of David Loy's real estate.

1. The auditor erred in his report, that judgment No. 96, April term, 1841, George F. Steele v. David Loy and John Patterson, should not be paid out of said money.

2. Also, that judgment No. 97, April term, 1841, George F. Steele v. David Loy and John Patterson, should not be paid out of said money.

3. Also, that judgment No. 101, April term, 1841, David Puderbaugh v. D. Loy & Co., should not be paid out of said money.

4. Also, that judgment No. 102, April term, 1841, David Puderbaugh v. D. Loy, should not be paid out of said money.

5. The auditor erred in not allowing the payment of the judgment of Joseph S. Morrison v. David Loy and Martin Loy, of April term, 1843, No. 19. Original judgment entered 21st October, 1839.

A motion was also made in the court below, by the counsel of George F. Steele, for a rule to show cause why the sheriff should not be permitted to amend his return, so as to conform to the facts, on

writs Nos. 65 and 92, of November term, 1842, George F. Steele v. David Loy and John Patterson.

The court denied the motion, and on the 29th of April, 1845, confirmed the auditor's report, and ordered and decreed that the money should be distributed in conformity with the report.

From this decree an appeal was taken to this court by Joseph S. Morrison and George F. Steele respectively; and the following errors assigned.

### On the part of Morrison.

The court erred in confirming the report of the auditor, and in decreeing the payment of the money in question to the judgments mentioned in the report; all of which, except that of James Agnew, bears date subsequently to the 21st of October, 1839, and to the 23d of November, 1840, to the exclusion of the judgment of the said Joseph S. Morrison v. David Loy and Martin Loy, which was originally entered on the said 21st of October, 1839, and revived by judgment on a scire facias to November term, 1843, No. 19, on the 25th of January, 1843, for $1255 84, with interest from the last-mentioned date.

### On the part of Steele.

1. The court erred in refusing the motion for a rule to show cause why the sheriff should not amend his return, to conform to the facts on writs Nos. 65 and 92, Nov. 7, 1842, George F. Steele v. David Loy and John Patterson.

2. The court erred in confirming the auditor's report, and in decreeing the payment of the money in question to the judgments mentioned in the report, to the exclusion of the judgments of George F. Steele v. David Loy and John Patterson.

*Russel*, for Steele, one of the appellants.

The auditor excluded Steele's judgments, because personal property had been previously taken in execution sufficient to satisfy them, had the property levied upon been sold; and it was therefore held, that he was not entitled to come on the real estate until all subsequent judgments had been satisfied. It was offered to be proved, that the sheriff returned the executions of Steele, "*stayed*," without authority from him; and, on the affidavit of the sheriff, we asked to have his return amended, so as to conform to the facts. The court below refused to permit the sheriff to amend, because other executions had issued, which were levied upon the property not sold, after the sheriff had made this return. As to the return of the sheriff being amended, he cited Diller v. Roberts, 13 Serg. & Rawle, 64; Dever v. Spence,

2 Whart. 219; Maris v. Schermerhorn, 3 Whart. 13; Layman v. Beam, 6 Whart. 185. We wished to relieve the sheriff from his unpleasant situation resulting from this return.

If a sheriff becomes liable for the amount of an execution in his hands, he is not discharged nor released from liability by the issuing of a subsequent execution. Myers v. The Commonwealth, 2 Watts & Serg. 60; Evans v. Boggs, 2 Watts & Serg. 229.

He also contended that Steele was entitled to the money arising from the real estate, because the stay of the executions by Steele (if at all allowed by him) was before the opposing judgments were obtained.

He denied that Steele had done any act by which he had forfeited his lien upon the land, or his right to the money from the fund raised by the sale of the land.

He insisted that the neglect of the officer, however gross it might be, would not postpone the lien creditor; he must be guilty of some positive or negative act in pursuing his lien, to postpone it. Moore's Appeal, 7 Watts & Serg.

If Steele is postponed, it is the fault of the sheriff, not through any neglect of ours. We never authorized the sheriff to delay, much more to stay our execution. McCoy v. Reed, 5 Watts, 300.

The lien creditor is only postponed, where he directs the sheriff not to proceed, or connives at his delay in doing so. The sheriff swore that he made his return without any authority from the plaintiff or his attorney.

*Thomson*, for Morrison, one of the appellants.

The judgment of Morrison was originally entered on the 21st of October, 1839. The ven. ex. on which the sheriff returned, " *not executed by order of plaintiff*," was returnable to. April term, 1840. These proceedings took place before any of the judgments, to which the court decreed the payment of the money, (except that of James Agnew,) was entered up. The earliest of these, which is for costs only, is dated 24th April, 1841, and the others are in the year 1842. If the property levied on remained in the hands of the defendants, then the plaintiffs in these judgments might have issued their executions and taken it. If it were wasted and gone, when their judgments were entered, they have no equity whatever to claim that Morrison should be postponed to them, as to his lien on the land, because at the time their judgments were entered he had no lien on any other existing fund. He who claims that a person who has a lien on two funds shall be postponed to him, because he has suffered one of them to be lost, must at least show, that he had at the time a sub-

sisting lien on-the fund to which such person finally resorts for pay-
ment.   He argued further, that the judgment of revival, which was
entered on the 1st February, 1843, was conclusive evidence that the
debt had not been paid by the defendant, or out of the goods levied
on; and taken in connection with the fact, that the goods levied upon
(which were left in the possession of the defendants, and either taken
in execution and sold under subsequent executions, issued upon sub-
sequent judgments, or sold or used by the defendants themselves) no
longer subsisted as a fund, from which the debt, or any part of it,
could be raised at the time of the distribution of the money in the
court below.

That the judgment on the sci. fa. is not only conclusive evidence
against the defendants of the debt and of the continuance of the lien
on the land, but, as there is no allegation of fraud, it is conclusive on
the judgment creditors also.   Upon these principles he contended, that
the return of the sheriff, that the ven. ex. had not been executed by
order of the plaintiff, does not postpone Morrison to the subsequent
judgment creditors of David Loy; and that the decree ought to be so
corrected as to take in his judgment.

*King*, for appellees.

In the court below, a motion was made by the counsel for Steele,
for a rule to show cause why the sheriff should not amend his return,
on the ven. ex. to Nov. 7, 1842, No. 92, and on the fi. fa. to Nov.
term 1842, No. 65, on the allegation that the plaintiff had never au-
thorized that officer to stay the sale.   This motion, I then considered,
and still contend, was irregular; that Steele had no right, in a contro-
versy between himself and persons not parties to the judgment, to have
any alteration or amendment of the record; that the return was con-
clusive in all cases, except in an action against the sheriff for a false
return, and that the testimony on this subject taken before the auditor
was entitled to no consideration whatever by the court.

If this question is to be raised here, I beg leave, without argument
on the subject, to refer the court to the following authorities: 7 Law
Lib. 52; Watson on Sheriff, 70, 71, 72; Brownfield *v.* Monro,
13 Serg. & Rawle, 267; Diller v. Roberts, 13 Serg. & Rawle, 64;
Mentz *v.* Hammon, 5 Wh. 150.

But whether the court erred or not in refusing the application to
amend the return, it does not in any manner affect the real question
raised upon this record.   The question for the consideration of this
court is, have the judgments of Steele and Morrison been discharged and
satisfied, so far as third persons were concerned, by the issuing of the

executions and a levy on personal property? Did they lose their lien upon the land, by a resort to the personal estate? That such is the rule of law in all cases of this kind, is by no means difficult to prove. The principle was fully established in the case of Hunt v. Breading, 12 Serg. & Rawle, 37, and from that time to the present has been recognised by our courts and practised upon by the profession. In Dean v. Patton, 13 Serg. & Rawle, 341, Justice Duncan uses the following emphatic language: "It is against all law and practice that a plaintiff can withdraw his levy on personal property, to come on the proceeds of land sold, before he has exhausted his levy and returned his writ to the court, stating how much were the proceeds of his levy? The same principle was recognised in the cases of Duncan v. Harris, 17 Serg. & Rawle, 436; Meason's estate, 4 Watts, 341; Robbins v. Bolles, 2 Watts, 365, and in Wood v. Vanarsdale, 3 Rawle, 401.

*Cox*, in reply.

The opinion of the court was delivered by KENNEDY, J.

In the matter of the appropriation of the moneys raised from a judicial sale made by the sheriff of the real estate of David Loy. The sheriff, after having made the sale, brought the moneys arising therefrom into court, that the same might be appropriated according to a decree of the court to be made for that purpose. The court appointed an auditor, to whom the matter was referred, that he, after notifying all the parties concerned to appear before him, at a time and place contained in the notice to be given, might investigate and inquire into the same, and make report of all the circumstances and facts connected therewith, as also of the appropriation of the moneys that ought to be made. The auditor accordingly, after proceeding in the matter as directed by the court, made a report, to which Joseph S. Morrison, George F. Steele, and D. Puderbaugh, having severally judgments against David Loy, that bound his real estate at the time of the sale thereof, made by the sheriff, severally excepted. The court, however, after hearing the parties by their counsel, approved and confirmed the report of the auditor, and decreed the money in court to be paid in conformity to it. These gentlemen considering themselves aggrieved by the decision of the court in this respect, have appealed therefrom to this court.

They complain, that the money arising from the sheriff's sale, which ought to have been applied to their judgments respectively, was appropriated to the payment of judgments posterior in date to theirs, the liens of which being subsequent, ought therefore to have been postponed. That the judgments of the appellants were obtained and be-

came liens first in point of time upon the real estate of David Loy, is not denied ; but it appears, that the appellants issued writs of fieri facias on their respective judgments, directed to the sheriff of the county, which were placed in his hands for execution, to which he made a return of having levied on personal property, specifying it apparently of sufficient value, had it been sold, to have satisfied the said judgments ; but left the property levied on, without selling, or even attempting to sell it, as it would seem, in the exclusive possession of the defendants, as it was before ; and although Joseph S. Morrison issued a writ of venditioni exponas, to April term, 1840, directing the sheriff to sell the personal property levied upon in his case, yet the sheriff made a return thereto, "not executed by order of plaintiff." So, George F. Steele, although he issued, to November term, 1842, the next term succeeding the return by the sheriff of personal property levied in his two cases, writs of venditioni exponas, requiring the sheriff to sell the property so levied, yet the sheriff returned thereto, "sale stayed by order of plaintiff." This return, however, would appear to have been made under a mistake on the part of the sheriff, for he has sworn, that he had no such order from Steele, the plaintiff, but had such an order from David Puderbaugh, as to his own executions against David Loy, and had some impression at the time, that Puderbaugh had some control over Steele's executions, which Puderbaugh denies on his oath. And so David Puderbaugh, who issued writs of fieri facias on his two judgments to August term, 1842, although he issued also writs of venditioni exponas to November term, 1842, afterwards stayed the execution of them. Some of the property levied upon by the sheriff, under the executions of some of the appellants, was afterwards taken in execution and sold at the suit of other judgment creditors, but the residue, which was much the greater part of it, was disposed of and used by the defendants themselves in the executions. Indeed, there was nothing to prevent them from doing so, as the possession of it was never taken from them, but, on the contrary, continued with them as before, to use it as they pleased. Upon this statement of the facts, it is argued, that the appellants lost that preference to which, otherwise, they would have been entitled, of having their judgments satisfied first out of the money in the court below, if they had not had a levy made on the personal property of the defendants under their judgments. That having sued out writs of fieri facias, and caused a levy by virtue thereof to be made by the sheriff on the personal property of the debtors, they were bound to prosecute the same with reasonable diligence, so as to render the execution of the judgments effectual, if practicable. That their conduct in suing out their writs of execution,

and having a levy returned thereon by the sheriff on the personal property of the debtors, was calculated to hinder, or at least delay, if not prevent, other judgment creditors from suing out executions, and taking the same property to satisfy their judgments, as it would most probably involve them in a contest or suits. Besides, as is alleged, it was calculated to make them believe, that the prior judgments of the appellants would be satisfied out of the personal property of the debtors, and that the real estate of the latter would hereby become a good and ample security for the payment of their judgments; and that then, through the conduct of the appellants, they were lulled to rest. There is great plausibility, as well as some force, in this argument, but still we do not think it sufficient to give the junior judgment creditors a preference to the moneys in the court below, over the appellants. The effect of giving such preference in this case would be to decide, that the appellants, by their neglect and lack of vigilance, had not only postponed their right to receive the amount of their judgments out of the money to that of the junior judgment creditors, but had actually altogether released or discharged the real estate of the debtors from the lien of their judgments, for it seems that the debtors are insolvent and have no property whatever remaining out of which the appellants could possibly make the amount of their judgments. It cannot be pretended for a moment, that, as between the appellants and the debtors, the former have done, or caused to be done, any thing whereby their judgments can be said to be satisfied, either in fact or in law, so that they would be entitled to claim the amount of their judgments as against the debtors themselves, out of the moneys made by the sale of their real estate. They obtained nothing by their levies on the personal property of their debtors, nor did the latter part with, or give up any thing levied on, for the purpose of satisfying the debts due to the former, but, on the contrary, used the same for other purposes. Next, let us inquire and see whether what was done by the appellants ought to be regarded as having produced any injury or detriment to the junior judgment creditors. The manner in which the sheriff made the levies on the personal property of the debtors at the respective suits of the appellants, by leaving it in their exclusive possession, to be used in the same way by them, as they had ever done previously, could not prevent the junior judgment creditors, if there were any at the time, from suing out executions so as to take the same property in execution, and having it applied to the payment of their judgments. The levy of the appellants, by leaving the debtors, the defendants in the executions, in the exclusive possession of the property, as was done, would have been void as against subsequent executions, if they

had been issued.   And hence the junior judgment creditors could not in law be said to have been hindered or delayed in suing out execution upon their judgments, and by virtue thereof, from having the personal property, previously levied on by the appellants, taken in execution and appropriated to the discharge of their claims.   It may be said, to be sure, that they were ignorant of the law and their rights in this respect, and were, therefore, in point of fact, actually hindered and delayed from obtaining payment of their judgments.   But it is a sufficient answer to this suggestion to say, that they were bound to know the law on the subject, and we must presume, therefore, that they did know it, and that their lying by and forbearing to proceed by suing out executions on their judgments, as they had a right to, and might have done, was a matter of choice and voluntary on their part; and if so, they certainly have no good ground to complain of the conduct of the appellants.   And as to Joseph S. Morrison especially, one of the appellants, there does not appear to be even the least shadow of ground of complaint; for the subsequent judgment creditors, who have had the money which he claims decreed to them by the court below, were not in being at the time he proceeded and had the personal property of the debtors levied on under his judgment.   So that, as to him, they cannot be said to have even an imaginary ground for pretending that they were hindered or delayed in obtaining satisfaction or payments of their debts.   Had it been shown that the consent of the appellants in suing out executions on their respective judgments as they did, and having levies made by virtue thereof on the personal property of the defendants therein named, was the result of previous collusion between them and the same defendants, for the purpose of deterring other creditors from levying on and taking it, so that the defendants or debtors in the executions might have the use and benefit of it; the case would have been very different, and, doubtless, such as would have postponed the right of the appellants to receive the money in question.   But nothing of the sort has been shown, nor is it even alleged.   We therefore think, that the court below erred in confirming the report of the auditor, and in decreeing that the appellants should not have their respective judgments paid out of the money in court, according to the seniority of their original dates and liens. The decree of the court is reversed in this particular, and the judgments of the appellants respectively ordered to be paid out of the money in the court below, according to the seniority of their respective dates and original liens.